UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DARRIN P. RITTER

       Plaintiff                            Civil Action No. 09-10684

v.

                                     District Judge Paul Borman
                                     Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## <u>REPORT AND RECOMMENDATION</u>

       Plaintiff Darrin Ritter brings this action under 42 U.S.C. §405(g), challenging a final

decision of Defendant Commissioner denying his applications for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI").  Before the Court are the

parties' cross-motions for summary judgment which have been referred for a Report and

Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I

recommend that Defendant's motion for summary judgment be DENIED and Plaintiff's motion

GRANTED to the extent that the case be remanded to the administrative level for further

proceedings,  pursuant to sentence four of 42 U.S.C. § 405(g).[1]

_____

[1]
       The district court's authority to remand a case for further administrative proceedings
is found in § 405(g). *Hollon v. Commissioner,* 447 F.3d 477, 482-83 (6th Cir.2006).
Sentence four of that section provides that "[t]he Court shall have power to enter, upon the

## PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on November 15, 2005, alleging disability as of July 1, 2004 (Tr. 60-62, 221-223).  After the initial denial of benefits, Plaintiff filed a timely request for an administrative hearing, held on July 3, 2008 in Oak Park, Michigan (Tr.224).  Administrative Law Judge ("ALJ") Karen Goheen presided (Tr. 224).  Plaintiff, represented by attorney Joshua Moore, testified, as did vocational expert ("VE") Raymond Dulecki (Tr. 228-261, 262-269).  On November 21, 2008, ALJ Goheen determined that Plaintiff could perform unskilled, exertionally light work (Tr. 22, 27).  On January 6, 2009, the Appeals Council denied review (Tr. 4-6).  Plaintiff filed for judicial review of the administrative decision on February 23, 2009.

## BACKGROUND FACTS

---

pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." A sentence four remand which does not grant benefits, but orders further administrative proceedings, must be done in conjunction with a final judgment. *See Shalala v. Schaefer*, 509 S.Ct. 292, 303, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) (a sentence four remand requires entry of judgment); *Melkonyan v. Sullivan,* 501 U.S. 89, 101-02, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991) (a final judgment must accompany a sentence four remand order); *Berkowski v. Commissioner of Social Sec.*, 652 F.Supp.2d 846, 849 (E.D.Mich.,2009) ("the remand must be made post-judgment pursuant to sentence four of 42 U.S.C. § 405(g)"); *Siuta v. Commissioner of Social Sec.*, 2009 WL 275732, 1 (E.D.Mich. 2009) ("A judgment must be entered immediately with a sentence four remand and the district court does not retain jurisdiction during the administrative proceedings on remand" (citing *Melkonyan, supra*).  Indeed, a prevailing lawyer in a sentence four remand cannot apply for attorney fees under the Equal Access to Justice Act ("EAJA") unless and until judgment is entered. *Shalala v. Schhaefer, supra*.

Plaintiff, born March 13, 1965, was 43 when the ALJ issued her decision (Tr. 27, 60). Plaintiff completed 10th grade and worked previously as a restaurant worker, heavy equipment operator, and a laborer (Tr. 77, 79).  Plaintiff  alleges disability as a result of blindness in the right eye, right ear hearing loss, balance problems, a knee condition, and a learning disability.

### A.  Plaintiff's Testimony

Plaintiff, 5' 7" and 162 pounds, testified that he was right-handed (Tr. 229).  He reported that he currently lived in a duplex with his girlfriend (Tr. 230).  He indicated that he had taken special education classes starting in the 3rd grade until he quit school in 10th grade (Tr. 230-231).  He denied the ability to read or perform mathematical calculations, but noted that he could sign his name and count change (Tr. 231).  Plaintiff admitted that his driver's license had been revoked for "drinking and driving" (Tr. 232).

Plaintiff reported that he worked at a Red Lobster restaurant from 1991 to 1998 as a prep cook and a dish washer, indicating that a right eye injury, his license revocation, and family problems led to his resignation (Tr. 234).  He reported that he was later employed by another restaurant as a prep cook, working for three years until the restaurant was sold (Tr. 235-236).  Plaintiff then worked as a sorter at a garbage company (Tr. 236).  He testified that in the past year, he worked as a dish washer one day each week (Tr. 237).

Plaintiff reported that he currently took extra strength Tylenol for eye and back pain and Lexapro for depression, adding that he did not have medical insurance  (Tr. 238).  In response to the ALJ's observation that Plaintiff had presented scant evidence of his medical

conditions, Plaintiff's attorney, reiterating that his client was uninsured, stated that Plaintiff was "in desperate need of physical [and] dental" care (Tr. 239). The attorney noted that Plaintiff had recently been assigned a case worker (Tr. 239).

In response to questioning by his attorney, Plaintiff alleged that he experienced eye strain in his "good" eye after watching television for extended periods (Tr. 243). He added that his placement in special education classes was attributable to poor vision (Tr. 243). Plaintiff testified that his mother's 1997 death, followed by the loss of his license, an eye injury, and his termination from Red Lobster were responsible for his emotional problems (Tr. 244). He added that since sustaining a head injury as a young adult, he experienced balance and hearing problems (Tr. 245). Plaintiff alleged that although he attended school until 10th grade, he had the approximate intellectual functional of an eight-year-old (Tr. 246).

Plaintiff acknowledged that when he was working, he was generally punctual and got along with his coworkers (Tr. 247-248). He reported that he could tend to his personal needs without assistance (Tr. 249-250). He estimated that he could lift up to 25 pounds, but was unable to walk more than two blocks due to knee problems (Tr. 251). He reported that sitting for more than four hours caused lower back cramps (Tr. 252). Plaintiff indicated that he was able to keep up with household chores, but had abandoned his former hobby of drawing due to eye strain (Tr. 253). He testified that he kept up with his friends by telephone and talked to his case manager on a weekly basis (Tr. 255).

Plaintiff admitted that he had undergone anger management therapy after an altercation with his girlfriend, adding that Lexapro "calm[ed]" him (Tr. 257). He denied

current alcohol or drug use, noting that transportation problems prevented him from continued participation in AA (Tr. 257). Plaintiff stated that balance problems interfered with his ability to work (Tr. 258). Plaintiff's attorney interjected that his client had been approved for free medical and mental health treatment but was currently on a waiting list (Tr. 259).

**B. Medical Evidence**

**1. Treating Sources**

February, 1972 school records indicate that Plaintiff exhibited average intelligence and was not deemed eligible for special education (Tr. 179). June, 1980 middle school records show that Plaintiff received failing grades in several courses (Tr. 186). April, 1982 records indicate that Plaintiff experienced a learning disability (Tr. 190).

In May, 2008, psychologist Raymond Small recommended that Plaintiff seek vocational assistance from a community service organization (Tr. 161). The same month, Plaintiff, noting that he experienced trouble obtaining health care, indicated that he "would like to do some construction work" (Tr. 162). Plaintiff noted that he interacted with his neighbors on an occasional basis (Tr. 171). He was deemed independent in activities of daily living, but needed to be reminded to take prescribed medication (Tr. 173-174). Plaintiff received a GAF of 55[2] (Tr. 177). In June, 2008, Dr. Nazimuddin Mohammed conducted

---

[2]GAF scores of 51-60 indicate moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ) (4th ed.2000).

a psychiatric evaluation, noting Plaintiff's history of alcohol abuse, right eye blindness, right ear deafness, and childhood abuse (Tr. 154-156).  Dr. Mohammed diagnosed Plaintiff with a mood disorder, prescribed Lexapro and assigned Plaintiff a GAF of 50 (Tr. 155).  Results of Wechsler Abbreviated Scale of Intelligence ("WASI") indicated verbal, performance, and full scale IQs of 79, 75, and 75 respectively (Tr. 159).

### 2. Consultive and Non-Examining Sources

 In February, 2006 Moises Alviar, M.D. performed a consultive physical examination on behalf of the SSA (Tr. 148-152).  Plaintiff reported that his right knee popped out regularly since sustaining a childhood injury, adding that he experienced episodes of dizziness since being hit in the head in a 1997 bar fight (Tr. 148).  Plaintiff also reported that a back injury the previous year created ongoing muscle stiffness (Tr. 148).  Dr. Alviar observed that Plaintiff was completely blind in the right eye but had "20/30" on the left, also noting a history of a "learning disability with dyslexia" (Tr. 149-150).  Plaintiff exhibited a slight limp and a reduced range of knee motion (Tr. 150, 152).

The following month, R. Hasan, M.D. conducted a psychiatric evaluation of Plaintiff on behalf of the SSA (Tr. 147).  Plaintiff reported that a 1988 closed head injury created ongoing short term memory problems (Tr. 144).  He also reported mild depression and Attention Deficit Disorder ("ADD") but denied psychiatric hospitalizations (Tr. 145, 147). He admitted to past alcohol abuse, but stated that he had been sober for the past three years (Tr. 145).  Plaintiff indicated that he spent his time performing light household chores, watching television, and cooking (Tr. 145). Dr. Hasan, noting the presence of ADD, learning

disability, head trauma, and right eye blindness, assigned Plaintiff a GAF of 45 to 50[3] (Tr. 147).

In April, 2006, A Psychiatric Review Technique found the presence of an affective disorder (depression) and substance abuse disorders but noted that Plaintiff's alcohol abuse was in remission (Tr. 130, 133, 138). Plaintiff's  restrictions in daily living, maintaining social functioning, and maintaining concentration, persistence and pace were deemed moderate (Tr. 140).

A Mental Residual Functional Capacity Assessment performed the same day found Plaintiff moderately limited in the ability understand and remember detailed instructions; maintain attention and concentration for extended periods; and accept instruction and criticism from supervisors appropriately (Tr. 126-127). The Assessment concluded that Plaintiff was capable of "simple work on [a] sustained basis," noting that he was able to care for his personal needs and use public transportation (Tr. 128).

In July, 2008, L. Patel, M.D. performed an updated physical examination on behalf of the SSA (Tr. 194-209). Plaintiff reported that right knee and leg pain prevented him from walking more than half a block, but indicated that he could stand and sit without limitation (Tr. 194). Plaintiff was able to perform a series of manipulative functions without difficulty and range of motion studies were normal (Tr. 196, 198-200). Plaintiff was deemed able to

---

[3]

A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision*, 34 (*DSM-IV-TR* )  (4th ed.2000).

lift and carry up to 20 pounds frequently and up to 50 pounds occasionally, and to sit for up to four hours at a time but stand or walk for only 15 minutes (Tr. 203). Dr. Patel limited Plaintiff to occasional pushing and pulling and frequent (as opposed to *constant*) overhead reaching (Tr. 205). He was limited to occasional pushing with the right foot and frequent pushing with the left (Tr. 205). Plaintiff was precluded from the climbing of ladders/scaffolds, kneeling, crouching, and crawling, and limited to occasional climbing of stairs/ramps, balancing, and stooping (Tr. 206). He was also precluded from working at heights, with machinery, or operating a motor vehicle (Tr. 207). He was limited to occasional exposure to humidity, pulmonary irritants, extreme temperatures, and vibration (Tr. 207). The following month, Daniel S. Zuckerbrod, M.D. conducted an ophthalmologic examination, confirming blindness in the right eye, but noted 20/30 uncorrected vision in the left eye with "a good prognosis" (Tr. 210-211). He concluded that while Plaintiff "need[ed] to observe monocular precautions," his vision was otherwise unimpaired (Tr. 215).

### C.    Vocational Expert Testimony

VE Raymond Dulecki classified Plaintiff's past relevant work as dishwasher and busboy ("general kitchen helper") as unskilled at the light exertional level[4] (Tr. 262).

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with

Taking into account Plaintiff's age, education, and work experience, the ALJ posed the following hypothetical question:

> "[A]ble to lift and carry up to 20 pounds occasionally, 10 frequently. Able to sit, stand or walk, any of them up to six, each up to six hours total with the usual breaks. Because of difficulty with detailed instructions and maintaining attention and concentration for extended periods of time is limited to simple, repetitive tasks. Could this person do any of the past work?"

(Tr. 262). The VE replied that the individual could perform Plaintiff's past work as either a dishwasher or busboy (Tr. 262). The ALJ then amended the question to include the following limitations:

> "If my person is also, has mono vision, my hypothetical person. If that person needed then to avoid for safety issues places where mono vision would be a safety issue, could they still do this work?"

(Tr. 262-263). The VE stated that the additional limitations, as well as being restricted to "very simple instructions" and "avoid[ing] work with the public" would not prevent the individual from performing Plaintiff's past jobs (Tr. 263). However, if the individual were further limited by a preclusion on "bright lights" and "staring at a screen," or the inability to read above the third grade level, the VE testified that the individual would be unable to perform the restaurant job, but could work as a hand packer (8,000 jobs in existence in Southeast Michigan) or janitor/stock worker (9,000) (Tr. 263-264). The VE testified that if Plaintiff's claim that he was unable to "use his eyes for sustained periods" was fully credited, all work would be precluded (Tr. 263). The VE stated that his job findings were consistent

---

frequent lifting or carrying of objects weighing up to 50 pounds.

with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 265).  In response to questioning by Plaintiff's attorney, the VE testified that the jobs cited could be performed by functionally illiterate individuals (Tr. 268-269).

### D.  The ALJ's Decision

Citing Plaintiff's medical records, ALJ Goheen found that while Plaintiff experienced the severe impairments of right patella dislocation; mood disorder; right eye blindness; right sided hearing loss and lumbar myositis, none of the conditions met or medically equaled one listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 19-20).  The ALJ determined that Plaintiff had the  Residual Functional Capacity ("RFC")

> "to perform light work . . . sitting, standing and/or walking up to a total of 6 of 8 hours each with the usual breaks; difficulty with detailed instructions and maintaining attention and concentration for extended periods of time limits the claimant to simple repetitive tasks; avoiding situations where mono-vision would be a safety concern; and further avoiding work with the public"

(Tr. 22).  The ALJ found that Plaintiff was unable to perform any of his past relevant work, but adopting the VE's job numbers, found that he could work as a hand packer, janitor, and stock worker (Tr. 26).

The ALJ found Plaintiff's allegations of limitation "not credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 23).  She noted that Plaintiff regularly cooked, cleaned, shopped, performed household repairs, washed clothes, and mowed the lawn (Tr. 23).  The ALJ observed that despite claims of eye strain, Plaintiff regularly played cards and watched televised sporting events (Tr. 23).

### STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6ᵗʰ Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*   800 F.2d 535, 545 (6ᵗʰ Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6ᵗʰ Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6ᵗʰ Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence,

-11-

whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Substantial Evidence

Plaintiff argues in effect that substantial evidence does not support the ALJ's non-disability determination. *Plaintiff's Brief,* 9-12, *Docket #10.* Plaintiff's counsel, noting that his client exhibited borderline intellectual functioning, faults the ALJ for citing Plaintiff's statements that he was capable and motivated to work over the findings of consultive medical and psychiatric evaluations.[5] *Id.* at 10-12. He argues that as such, the RFC found in the administrative opinion does not reflect his true degree of psychological and physical limitation.

In regard to psychological and mental limitations, I disagree with counsel's argument

---

[5]

Plaintiff cites *Hall v. Bowen,* 837 F. 2d 272 (6th Circuit 1998), for the proposition that an ALJ must provide good reasons for rejecting a treating physician's opinion. However, he relies only on the findings of consultive sources for his argument that the non-disability finding was not supported by substantial evidence. *Plaintiff's Brief* at 9-10.

that his client's borderline intellectual functioning, depression, and former substance abuse establish disability. The ALJ reasonably inferred that Plaintiff's ability to work full-time for many years stood at odds with claims that he intellectually and psychologically incapable of any work (Tr. 21). Plaintiff's treating and consultive records do not suggest that his current intellectual and psychological state is worse than during his working years.

In contrast, the ALJ's assessment of Plaintiff's *physical* capabilities is not supported by the record. To be sure, the ALJ acknowledged Plaintiff's workplace limitations as a result of monocular vision, hearing loss, and a lumbar spine condition (Tr. 19). However, while the ALJ included "right patella dislocation" among the severe impairments at Step Two of the analysis, her hypothetical question to the VE and the ultimate RFC do not reflect this limitation (Tr. 22, 262-263). Most obviously, the ALJ's finding that Plaintiff was capable of walking for up to six hours each day stands unsupported by the record. Plaintiff testified that knee problems prevented him from walking more than two blocks at a time (Tr. 251), consistent with February, 2006 consultive observations of a limp, decreased range of knee motion and significant degenerative changes as a result of the dislocation (Tr. 150, 152). In July, 2008, Dr. Patel confirmed the earlier findings, noting that "[e]xamination reveal[ed] dislocated right patella" (Tr. 196). While the consultive physician observed a "normal gait pattern," this does not contradict Plaintiff's claim that he could walk for only limited periods (Tr. 196). In fact, Dr. Patel found explicitly that the dislocation prevented Plaintiff from standing or walking for more than 15 minutes in an eight-hour workday (Tr. 204).

The ALJ, rejecting Plaintiff's allegation that he was unable to walk for long periods,

-13-

noted that he continued to cook, clean, shop, perform household repairs, and mow the lawn (Tr. 23). However, even assuming that Plaintiff performed *all* of these activities for limited periods, they do not support the conclusion that he was capable of walking for six hours of an eight-hour shift (Tr. 23). *See Walston v. Gardner,* 381 F2d 580, 585-586 (6th Cir. 1987)(activities performed on an intermittent basis, standing alone, do not establish the ability to perform such tasks on a sustained basis). For example, mowing the lawn surrounding Plaintiff's duplex would be expected to take one to two hours a week and cannot be equated with walking for six hours, five days a week. Further, while the ALJ points out that Plaintiff's long-term knee problems did not prevent him from working previously, more recent evidence of degenerative changes to the knees indicate that Plaintiff's knee condition worsened in the years between his most recent kitchen position and the present (Tr. 23).

Further administrative findings in support of the RFC reflect either a misstatement or distortion of the record. Although the ALJ cited a non-examining agency finding that Plaintiff's physical conditions were "non-severe," in fact, Dr. Ahmed Muhammad's one-sentence February, 2006 statement clearly reflects the dearth of treating records (apparently due to Plaintiff's financial limitations) rather than the absence of medical problems (Tr. 23, 192, 239-240). Likewise, while the ALJ's rejects Dr. Patel's July, 2008 conclusion that Plaintiff could stand or walk for only 15 minutes as "inconsistent with the remainder of the questionnaire, the examination findings and objective medical evidence," the consultive physician's "15 minute" conclusion was based on his finding that Plaintiff experienced a

-14-

dislocated patella (Tr. 24).  While the ALJ selectively adopted the consultive examiner's finding  of an absence of muscle atrophy and a normal range of motion, these observations, (taken out of the context of the rest of the findings) do not establish that Plaintiff was capable of walking six hours a day despite his *knee* problem.  Moreover, while the ALJ implies that the "diagnosis" of the patella dislocation was based on Plaintiff's subjective complaints rather than "objective" medical findings, Dr. Patel's notes state explicitly that "[e]xamination reveals dislocated right patella" (Tr. 196).  Indeed, aside from the "no atrophy" and range of motion findings, the medical records do not contain a scintilla of support for  the conclusion that Plaintiff could walk for up to six hours each day with a dislocated patella.

Likewise, the ALJ failed to address Plaintiff's *postural* limitations.  While Dr. Patel also found that Plaintiff would be precluded from work involving ladders/scaffolds, kneeling, crouching, and crawling climbing,  and only occasional climbing of stairs/ramps, balancing, and stooping, the ALJ did not include postural limitations in the RFC or hypothetical question.  Even assuming that the consultive physician overstated the postural limitations, the omission of *any* postural impairments in the RFC or the hypothetical questions to the VE (given the presence of a patella dislocation) is completely unsupported by the record (Tr. 206, 262-263).

As such, the hypothetical question's inclusion of the ability to walk "six hours total" per eight-hour shift, combined with the lack of reference to postural limitations, amounts to reversible error.  "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question

-15-

accurately portrays [the] plaintiff's individual physical and mental impairments." *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987)(internal citations omitted); *Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004).  The VE's job findings, adopted by the ALJ, are tainted by the omission of key exertional and postural limitations in the hypothetical question.   *See Teverbaugh v. Comm'r of Soc. Sec.,* 258 F. Supp. 2d 702, 706 ( E.D. Mich. 2003)(Roberts, J.)("Because the VE's testimony was the only step five evidence that the ALJ relied upon, the Court cannot rule that there is substantial evidence to support the ALJ's findings").

I note that the errors discussed above, while critical, do not automatically entitle Plaintiff to benefits.  *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994).  Rather, the appropriate remedy is a remand for further administrative proceedings consistent with this Report and Recommendation.

## CONCLUSION

For these reasons, I recommend that Defendant's motion for summary judgment be DENIED and Plaintiff's motion GRANTED  to the extent that the case  be remanded to the administrative level for further proceedings,  pursuant to sentence four of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435

(1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: January 11, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 11, 2010.

s/Susan Jefferson
Case Manager

-17-