UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIN P. RITTER,

    Plaintiff,

Case No. 09-cv-10684

v.

Paul D. Borman
United States District Judge

R. Steven Whalen
United States Magistrate Judge

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

OPINION AND ORDER (1) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION (DKT. NO. 15);
(2) DENYING DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION (DKT. NO. 16);
(3) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 10);
(4) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 13);
AND
(5) REMANDING TO THE ADMINISTRATIVE LAW JUDGE FOR FURTHER LIMITED
PROCEEDINGS

Before the Court are Defendant's Objections to the Magistrate Judge's Report and Recommendation. (Dkt. No. 16.) Plaintiff did not file Objections to the Magistrate Judge's Report and Recommendation but did file a Response to Defendant's Objections. (Dkt. No. 17.) For the reasons that follow, the Court adopts the Magistrate Judge's Report and Recommendation and remands to the administrative level for further proceedings.

I.    **BACKGROUND**

The parties do not object to the procedural history or background facts as set forth in the

1

Magistrate Judge's Report and Recommendation and the Court adopts them here:

Plaintiff applied for DIB and SSI on November 15, 2005, alleging disability as of July 1, 2004 (Tr. 60-62, 221-223). After the initial denial of benefits, Plaintiff filed a timely request for an administrative hearing, held on July 3, 2008 in Oak Park, Michigan (Tr.224). Administrative Law Judge ("ALJ") Karen Goheen presided (Tr. 224). Plaintiff, represented by attorney Joshua Moore, testified, as did vocational expert ("VE") Raymond Dulecki (Tr. 228-261, 262-269). On November 21, 2008, ALJ Goheen determined that Plaintiff could perform unskilled, exertionally light work (Tr. 22, 27). On January 6, 2009, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the administrative decision on February 23, 2009.

Plaintiff, born March 13, 1965, was 43 when the ALJ issued her decision (Tr. 27, 60). Plaintiff completed 10th grade and worked previously as a restaurant worker, heavy equipment operator, and a laborer (Tr. 77, 79). Plaintiff alleges disability as a result of blindness in the right eye, right ear hearing loss, balance problems, a knee condition, and a learning disability.

**A. Plaintiff's Testimony**

Plaintiff, 5' 7" and 162 pounds, testified that he was right-handed (Tr. 229). He reported that he currently lived in a duplex with his girlfriend (Tr. 230). He indicated that he had taken special education classes starting in the 3rd grade until he quit school in 10th grade (Tr. 230-231). He denied the ability to read or perform mathematical calculations, but noted that he could sign his name and count change (Tr. 231). Plaintiff admitted that his driver's license had been revoked for "drinking and driving" (Tr. 232).

Plaintiff reported that he worked at a Red Lobster restaurant from 1991 to 1998 as a prep cook and a dish washer, indicating that a right eye injury, his license revocation, and family

problems led to his resignation (Tr. 234). He reported that he was later employed by another restaurant as a prep cook, working for three years until the restaurant was sold (Tr. 235-236). Plaintiff then worked as a sorter at a garbage company (Tr. 236). He testified that in the past year, he worked as a dish washer one day each week (Tr. 237).

Plaintiff reported that he currently took extra strength Tylenol for eye and back pain and Lexapro for depression, adding that he did not have medical insurance (Tr. 238). In response to the ALJ's observation that Plaintiff had presented scant evidence of his medical conditions, Plaintiff's attorney, reiterating that his client was uninsured, stated that Plaintiff was "in desperate need of physical [and] dental" care (Tr. 239). The attorney noted that Plaintiff had recently been assigned a case worker (Tr. 239).

In response to questioning by his attorney, Plaintiff alleged that he experienced eye strain in his "good" eye after watching television for extended periods (Tr. 243). He added that his placement in special education classes was attributable to poor vision (Tr. 243). Plaintiff testified that his mother's 1997 death, followed by the loss of his license, an eye injury, and his termination from Red Lobster were responsible for his emotional problems (Tr. 244). He added that since sustaining a head injury as a young adult, he experienced balance and hearing problems (Tr. 245). Plaintiff alleged that although he attended school until 10th grade, he had the approximate intellectual functional of an eight-year-old (Tr. 246).

Plaintiff acknowledged that when he was working, he was generally punctual and got along with his coworkers (Tr. 247-248). He reported that he could tend to his personal need without assistance (Tr. 249-250). He estimated that he could lift up to 25 pounds, but was unable to walk more than two blocks due to knee problems (Tr. 251). He reported that sitting for more than four

3

hours caused lower back cramps (Tr. 252). Plaintiff indicated that he was able to keep up with household chores, but had abandoned his former hobby of drawing due to eye strain (Tr. 253). He testified that he kept up with his friends by telephone and talked to his case manager on a weekly basis (Tr. 255).

Plaintiff admitted that he had undergone anger management therapy after an altercation with his girlfriend, adding that Lexapro "calm[ed]" him (Tr. 257). He denied current alcohol or drug use, noting that transportation problems prevented him from continued participation in AA (Tr. 257). Plaintiff stated that balance problems interfered with his ability to work (Tr. 258). Plaintiff's attorney interjected that his client had been approved for free medical and mental health treatment but was currently on a waiting list (Tr. 259).

**B. Medical Evidence**

**1. Treating Sources**

February, 1972 school records indicate that Plaintiff exhibited average intelligence and was not deemed eligible for special education (Tr. 179). June, 1980 middle school records show that Plaintiff received failing grades in several courses (Tr. 186). April, 1982 records indicate that Plaintiff experienced a learning disability (Tr. 190).

In May, 2008, psychologist Raymond Small recommended that Plaintiff seek vocational assistance from a community service organization (Tr. 161). The same month, Plaintiff, noting that he experienced trouble obtaining health care, indicated that he "would like to do some construction work" (Tr. 162). Plaintiff noted that he interacted with his neighbors on an occasional basis (Tr. 171). He was deemed independent in activities of daily living, but needed to be reminded to take

4

prescribed medication (Tr. 173-174). Plaintiff received a GAF of 55.[1] (Tr. 177). In June, 2008, Dr. Nazimuddin Mohammed conducted a psychiatric evaluation, noting Plaintiff's history of alcohol abuse, right eye blindness, right ear deafness, and childhood abuse (Tr. 154-156). Dr. Mohammed diagnosed Plaintiff with a mood disorder, prescribed Lexapro and assigned Plaintiff a GAF of 50 (Tr. 155). Results of Wechsler Abbreviated Scale of Intelligence ("WASI") indicated verbal, performance, and full scale IQs of 79, 75, and 75 respectively (Tr. 159).

### 2. Consultive and Non-Examining Sources

In February, 2006 Moises Alviar, M.D. performed a consultive physical examination on behalf of the SSA (Tr. 148-152). Plaintiff reported that his right knee popped out regularly since sustaining a childhood injury, adding that he experienced episodes of dizziness since being hit in the head in a 1997 bar fight (Tr. 148). Plaintiff also reported that a back injury the previous year created ongoing muscle stiffness (Tr. 148). Dr. Alviar observed that Plaintiff was completely blind in the right eye but had "20/30" on the left, also noting a history of a "learning disability with dyslexia" (Tr. 149-150). Plaintiff exhibited a slight limp and a reduced range of knee motion (Tr. 150, 152).

The following month, R. Hasan, M.D. conducted a psychiatric evaluation of Plaintiff on behalf of the SSA (Tr. 147). Plaintiff reported that a 1988 closed head injury created ongoing short term memory problems (Tr. 144). He also reported mild depression and Attention Deficit Disorder ("ADD") but denied psychiatric hospitalizations (Tr. 145, 147). He admitted to past alcohol abuse, but stated that he had been sober for the past three years (Tr. 145). Plaintiff indicated that he spent

---

[1] GAF scores of 51-60 indicate moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ) (4th ed.2000).

his time performing light household chores, watching television, and cooking (Tr. 145). Dr. Hasan, noting the presence of ADD, learning disability, head trauma, and right eye blindness, assigned Plaintiff a GAF of 45 to 50.[2] (Tr.147). In April, 2006, A Psychiatric Review Technique found the presence of an affective disorder (depression) and substance abuse disorders but noted that Plaintiff's alcohol abuse was in remission (Tr. 130, 133, 138). Plaintiff's restrictions in daily living, maintaining social functioning, and maintaining concentration, persistence and pace were deemed moderate (Tr. 140). A Mental Residual Functional Capacity Assessment performed the same day found Plaintiff moderately limited in the ability understand and remember detailed instructions; maintain attention and concentration for extended periods; and accept instruction and criticism from supervisors appropriately (Tr. 126-127). The Assessment concluded that Plaintiff was capable of "simple work on [a] sustained basis," noting that he was able to care for his personal needs and use public transportation (Tr. 128).

On July 29, 2008, L. Patel, M.D. performed an updated physical examination which was ordered by the ALJ at the July 3, 2008 hearing. (Tr. 194-209; 269). Plaintiff reported that right knee and leg pain prevented him from walking more than half a block, but indicated that he could stand and sit without limitation (Tr. 194). Plaintiff was able to perform a series of manipulative functions without difficulty and range of motion studies were normal (Tr. 196, 198-200). Plaintiff was deemed able to lift and carry up to 20 pounds frequently and up to 50 pounds occasionally, and to sit for up to four hours at a time but stand or walk for only 15 minutes (Tr. 203). Dr. Patel limited Plaintiff to

---

[2] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision*, 34 (*DSM-IV-TR)* (4th ed.2000).

occasional pushing and pulling and frequent (as opposed to *constant*) overhead reaching (Tr. 205). He was limited to occasional pushing with the right foot and frequent pushing with the left (Tr. 205). Plaintiff was precluded from the climbing of ladders/scaffolds, kneeling, crouching, and crawling, and limited to occasional climbing of stairs/ramps, balancing, and stooping (Tr. 206). He was also precluded from working at heights, with machinery, or operating a motor vehicle (Tr. 207). He was limited to occasional exposure to humidity, pulmonary irritants, extreme temperatures, and vibration (Tr. 207). The following month, Daniel S. Zuckerbrod, M.D. conducted an ophthalmologic examination, confirming blindness in the right eye, but noted 20/30 uncorrected vision in the left eye with "a good prognosis" (Tr. 210-211). He concluded that while Plaintiff "need[ed] to observe monocular precautions," his vision was otherwise unimpaired (Tr. 215).

**C. Vocational Expert Testimony**

VE Raymond Dulecki classified Plaintiff's past relevant work as dishwasher and busboy ("general kitchen helper") as unskilled at the light exertional level.[3] (Tr. 262). Taking into account Plaintiff's age, education, and work experience, the ALJ posed the following hypothetical question:

> [A]ble to lift and carry up to 20 pounds occasionally, 10 frequently. Able to sit, stand or walk, any of them up to six, each up to six hours total with the usual breaks. Because of difficulty with detailed instructions and maintaining attention and concentration for extended periods of time is limited to simple, repetitive tasks. Could this person do any

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

7

of the past work?

(Tr. 262). The VE replied that the individual could perform Plaintiff's past work as either a dishwasher or busboy (Tr. 262). The ALJ then amended the question to include the following limitations:

> If my person is also, has mono vision, my hypothetical person. If that person needed then to avoid for safety issues places where monovision would be a safety issue, could they still do this work?

(Tr. 262-263). The VE stated that the additional limitations, as well as being restricted to "very simple instructions" and "avoid[ing] work with the public" would not prevent the individual from performing Plaintiff's past jobs (Tr. 263). However, if the individual were further limited by a preclusion on "bright lights" and "staring at a screen," or the inability to read above the third grade level, the VE testified that the individual would be unable to perform the restaurant job, but could work as a hand packer (8,000 jobs in existence in Southeast Michigan) or janitor/stock worker (9,000) (Tr. 263-264). The VE testified that if Plaintiff's claim that he was unable to "use his eyes for sustained periods" was fully credited, all work would be precluded (Tr. 263). The VE stated that his job findings were consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 265). In response to questioning by Plaintiff's attorney, the VE testified that the jobs cited could be performed by functionally illiterate individuals (Tr. 268-269).

## II. ANALYSIS

### A. Legal Standard

Where, as here, a magistrate judge has issued a report and recommendation and a party files timely objections to it, the district court conducts a *de novo* review of those parts of the report and recommendation to which the party objects. 28 U.S.C. 636(b)(1).

This Court has jurisdiction to review the Commissioner's denial of Plaintiff's disability benefits. *See* 42 U.S.C. § 405(g). But in reviewing that decision, the Court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the Comissioner's decision is limited to an inquiry into whether his findings were supported by substantial evidence and whether he employed the proper legal standards in reaching his conclusion. *Barnard v. Sec'y of Health and Human Servs,*, 889 F.2d 679, 681 (6th Cir. 1989). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm:

> Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive so long as they are supported by substantial evidence. [A court's] review is limited to determining whether there is substantial evidence in the record to support its findings. Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Further, [the court] must defer to an agency's decision even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ. [The court's] role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony.

*Wright v. Missionary*, 321 F.3d 611, 614-15 (6th Cir. 2003) (internal citations and quotation omitted).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th

Cir. 2007). "An ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir.2003). At the same time, the court may not make credibility determinations based solely upon "intangible or intuitive notions about an individual's credibility." *Rogers, supra* at 247, quoting Soc. Sec. Rul. 96-7p.

In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Sec'y of Health & Human Servs.*, 755 F.2d 495, 497 (6th Cir. 1985). The Court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been relied upon by the ALJ. *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

**B.      The ALJ's Decision**

The Commissioner evaluates disability claims using a five-step sequential process. 20 C.F.R. § 404.1520. Although the burden of proof is on the claimant through the first four steps of the process, if the fifth step is reached without a finding that the claimant is not disabled, then the burden shifts to the Commissioner. *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994). The five steps are as follows:

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
>
> 2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.
>
> 3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.
>
> 4. If a decision cannot be reached based on current work activity and medical facts

alone, and the claimant has a severe impairment, then the [Commissioner] reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the [Commissioner] considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Id*. (citing 20 C.F.R. § 404.1520 (1982)).

Citing Plaintiff's medical records, ALJ Goheen found that while Plaintiff experienced the severe impairments of right patella dislocation; mood disorder; right eye blindness; right sided hearing loss and lumbar myositis, none of the conditions met or medically equaled one listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 19-20). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC"):

> to perform light work . . . sitting, standing and/or walking up to a total of 6 of 8 hours each with the usual breaks; difficulty with detailed instructions and maintaining attention and concentration for extended periods of time limits the claimant to simple repetitive tasks; avoiding situations where mono-vision would be a safety concern; and further avoiding work with the public.

(Tr. 22). The ALJ found that Plaintiff was unable to perform any of his past relevant work, but adopting the VE's job numbers, found that he could work as a hand packer, janitor, and stock worker (Tr. 26).

The ALJ found Plaintiff's allegations of limitation "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 23.) She noted that Plaintiff regularly cooked, cleaned, shopped, performed household repairs, washed clothes, and mowed the lawn (Tr. 23). The ALJ observed that despite claims of eye strain, Plaintiff regularly played cards and watched televised sporting events (Tr. 23).

11

C.      **Defendant's Objections**[4]

Defendants object to that portion of the Magistrate Judge's Report and Recommendation which finds that the ALJ's determination that Plaintiff would be able to walk for up to six hours a day was not supported by substantial evidence. This Court denies Defendant's objection and agrees with the Magistrate Judge that the ALJ's determination that Plaintiff was able to do light work (which could involve walking up to 6 hours a day) without postural restrictions was not supported by substantial evidence.[5]

The Magistrate Judge correctly noted that while the ALJ included "right patella dislocation" as a severe impairment at Step Two of her analysis, her hypothetical question to the VE and the ultimate RFC do not reflect this limitation. (Tr. 22, 262-263.) The ALJ disregarded that portion of the consultative evaluation of Dr. Patel which limited Plaintiff to 10-15 minutes of standing and walking in an hour without relying on any other documented medical evidence to support her decision. In support of her decision to reject this portion of Dr. Patel's report, the ALJ relied in part on the fact that Plaintiff could cook, clean, shop, perform household repairs, and mow the lawn. (Tr. 23.) However, as the Magistrate Judge observed, the fact that Plaintiff could perform these tasks for limited periods does not support a conclusion that he was capable of walking for six hours of an

---

[4] The parties do not object to the Magistrate Judge's conclusion that the ALJ's decision regarding Plaintiff's alleged mental impairments was supported by substantial evidence. The Court affirms that portion of the Magistrate Judge's Report and Recommendation that the ALJ's conclusion as to Plaintiff's mental impairments was supported by substantial evidence and finds that the ALJ's RFC and hypothetical to the Vocational Expert accurately portrayed Plaintiff's mental impairments.

[5] The Court finds that, to the extent that the ALJ's decision rejecting Dr. Patel's limitations are based upon findings relating to Plaintiff's complaints about back pain, as opposed to knee pain, the ALJ's decision was supported by substantial evidence. The Court notes that the ALJ relied on the x-ray reports of Plaintiff's cervical, lumbar and dorsal spine, all of which were normal. (Tr. 197.)

eight hour shift. (Tr. 23.) *See Walston v. Gardner*, 381 F.2d 580, 585-586 (6th Cir. 1987) (activities performed on an intermittent basis, standing alone, do not establish the ability to perform such tasks on a sustained basis.)

The ALJ also relied on Plaintiff's statement to Dr. Patel that "standing and sitting [were] unlimited." (Tr. 23, 194.) This does not speak, however, to Plaintiff's ability to walk with a dislocating knee for six out of eight hours of a workday, which Dr. Patel found was limited by his dislocating patella. (Tr. 204.) While the ALJ purports to rely on other portions of Dr. Patel's report that Plaintiff had no atrophy of his muscles and good range of motion, the ALJ does not cite and other documented medical evidence that Plaintiff's dislocating knee did not support Dr. Patel's restriction on Plaintiff's ability to walk for six out of eight hours in a day. The ALJ does rely on an earlier one-page non-examining agency finding that Plaintiff's physical conditions were "non-severe," but this opinion was unsupported by any medical documentation. Finally, the ALJ did not discuss at all the February 4, 2006 Report of Dr. Moises Alviar, M.D., which notes "[d]egenerative changes in the right knee with recurrent dislocation of the left patella." (Tr. 150.) The ALJ simply notes that Plaintiff has had knee complaints since childhood that have not prevented him from working before. (Tr. 23.) This fails to account, however, for a worsening of Plaintiff's condition since that time.

In the instant case, the ALJ concluded at the hearing in this matter that there was insufficient evidence for her to render an opinion on Plaintiff's orthopedic limitations, i.e. his knees and his back, and she ordered a consultative exam. (Tr. 269.) Dr. Patel performed the exam, submitted his report on Plaintiff's restrictions, which the ALJ disregarded in part in her RFC and her hypothetical to the VE. Admittedly, Dr. Patel's restrictions on Plaintiff's walking, standing and sitting are less

13

than clear. He states that Plaintiff is limited in standing and walking to 10-15 minutes at one time without interruption and also states that Plaintiff is limited in standing and walking for only 10-15 minutes in a full 8 hour period. Dr. Patel states at the same time that Plaintiff can only sit for 4 hours in each of those time frames, which leaves several hours of the day unaccounted for, without explanation as to what activity Plaintiff would be performing for the balance of the 8 hours, as requested on the examining form. (Tr. 204.) However, this lack of clarity in the report does not support the ALJ's decision to completely ignore, without reference to other documented medical evidence, the noted limitations on Plaintiff's ability to walk for a sustained 6 hour period.

Additionally, the ALJ failed to address Plaintiff's postural limitations as noted by Dr. Patel. Dr. Patel found that Plaintiff would be precluded from work involving ladders/scaffolds, kneeling, crouching, crawling and climbing and could only occasionally climb stairs/ramps, balance, and stoop and could never tolerate unprotected heights, moving mechanical parts or operate a motor vehicle. (Tr. 206-207.) Given Dr. Patel's finding of a dislocating patella, and a history of recurrent dislocations, Dr. Patel could have concluded that this condition affected Plaintiff's stability. The ALJ did not include any postural limitations in the RFC or the hypothetical questions to the VE. As the Magistrate Judge noted, even assuming that the postural limitations were exaggerated, the failure to address them at all, given the documented medical history of a dislocating patella, either in the RFC or the hypothetical, is completely unsupported by the record. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's physical and mental impairments." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (internal citations omitted). This Court agrees with the Magistrate Judge that the VE's job findings,

adopted by the ALJ, are tainted by the omission of key exertional and postural limitations in the hypothetical question. *See Teverbaugh v. Comm'r of Soc. Sec.*, 258 F. Supp. 2d 702, 706 (E.D. Mich. 2003).

The Court has carefully reviewed the Magistrate Judge's Report and Recommendation and concurs with the conclusions reached by the Magistrate Judge. Nonetheless, 42 U.S.C. § 405(g) authorizes only two types of remand: "(1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir.1994). Because this case does not require consideration of new evidence, the remand must be made post-judgment pursuant to sentence four of 42 U.S.C. § 405(g).

The Court, at this stage of the proceedings, reverses the Commissioner's denial of Plaintiff's benefits insofar as the ALJ rejected Dr. Patel's recommendations regarding Plaintiff's walking and postural restrictions, which resulted in an RFC and a hypothetical to the VE which were not supported by substantial evidence. Further, the Court remands this case at which time the ALJ will re-evaluate Plaintiff's physical impairments caused by his dislocated patella and determine how those impairments limit Plaintiff's ability to walk for 6 hours out of an 8 hour period and Plaintiff's ability to perform work involving ladders/scaffolds, kneeling, crouching, crawling and climbing and his ability to climb stairs/ramps, balance and stoop and to tolerate unprotected heights, moving mechanical parts or operate a motor vehicle, i.e. the walking and postural limitations noted by Dr. Patel in his July 29, 2008 Consultative Exam (Tr. 204-207). The ALJ must then reevaluate Plaintiff's RFC and show, supported by substantial evidence, that there is work available in the

economy which Plaintiff can perform.

## III. CONCLUSION

For the foregoing reasons:

(1) Plaintiff's motion for summary judgment is GRANTED;[6]

(2) the Commissioner's motion for summary judgment is DENIED; and

(3) this matter is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) solely to reconsider the extent to which substantial evidence supports a finding that Plaintiff's recurrent dislocating patella required additional or different limitations in Plaintiff's RFC and in the ALJ's hypothetical to the Vocational Expert. The Commissioner's reconsideration shall be specifically limited to Plaintiff's ability to walk for 6 hours out of an 8 hour period and Plaintiff's ability to perform work involving ladders/scaffolds, kneeling, crouching, crawling and climbing and his ability to climb stairs/ramps, balance and stoop and to tolerate unprotected heights, moving mechanical parts or operate a motor vehicle, i.e. the walking and postural limitations noted by Dr. Patel in his July 29, 2008 Consultative Exam (Tr. 204-207). Finally, the ALJ will thereafter opine as to how those two reconsiderations impact Plaintiff's request for benefits.

---

[6] Since this matter is being remanded for further proceedings, the Court does not yet designate a prevailing party.

IT IS SO ORDERED.                S/Paul D. Borman
                                 PAUL D. BORMAN
                                 UNITED STATES DISTRICT JUDGE


Dated: March 22, 2010


## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 22, 2010.

                                 S/Denise Goodine
                                 Case Manager